### E. R. TARVER, RECEIVER, V. THE LAND MORTGAGE BANK OF TEXAS.

#### No. 370.

1. **Subrogation.**—Subrogation rests on principles of equity, and privity of contract is not necessary to its support. It requires, (1) that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that party's rights; and (2) in doing this, he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgages, etc. Ins. Co. v. Middleport, 124 U. S., 549.

2. **Same.**—The appellee had a lien on certain property belonging to the Laredo Improvement Company, which was foreclosed, subject to $4525.84, a superior lien, growing out of the expenses of the receivership and receiver's certificates, and the property having been sold for less than appellee's claim, appellee (but for this claim adjudged a superior lien) would have been entitled to the whole proceeds of the sale. It was therefore subrogated to the right of the parties to whom the $4525.84 was paid, who were to have the amounts due them on receiver's certificates, etc., paid by the Laredo Improvement Company. When a sum sufficient to reimburse the appellee was collected from the stockholders, upon which there was no lien superior to that paid off

by appellee, it was entitled to an order of the court requiring the receiver to reimburse it out of such sum.    Clifford v. Campbell, 65 Texas, 246.

APPEAL from Webb County.    Tried below before Hon. A. L. Mc-LANE.

*W. Showalter* and *G. E. Mann,* for appellant.

*C. Von Carlowitz,* for appellee.

NEILL, ASSOCIATE JUSTICE.—The appellee having paid $4525.84 in discharge of a lien which was adjudged superior to one it held on certain real property, filed a motion against appellant, and asked that the receiver be required to reimburse it in said amount out of a fund of $20,000, which had been collected by him after appellee made such payment.    The court tried the case without a jury, and entered judgment for appellee for $3000; from which judgment the receiver has appealed to this court.    The appellee also filed a cross-assignment of errors to the action of the court in not awarding it the full amount asked for.    The nature of the case will more fully appear from our conclusions of fact, which are:

1. On the petition of unsecured creditors a receiver was appointed by the District Court of Webb County on the 6th day of June, 1891, in case number 793, styled W. Showalter v. The Laredo Improvement Company, of the property of the Laredo Improvement Company, as an insolvent corporation.    The receiver qualified under his appointment, and took charge of all the assets of said corporation.

2. That before the suit was instituted in which the receivership was granted, the improvement company was indebted to the Land Mortgage Bank of Texas, and executed two deeds of trust with power of sale on certain of its real property to secure such indebtedness.

3. An application was made to the court by the receiver for an order to sell all the tangible property of the Laredo Improvement Company free from liens, and the Land Mortgage Bank, as one of the lien-holders, was made a party to the proceeding, and citation was issued to it on the 25th day of November, 1891, to show cause why such sale should not be made.    The application for such sale showed that there were various liens on divers pieces of property, and receiver's certificates which were liens on specific property in such certificates mentioned.

4. The Land Mortgage Bank appeared in obedience to the order of court, and set up the debts and liens mentioned, and by cross-bill prayed judgment for its debt and foreclosure of its liens.    In its cross-bill it recognized the power of the court to issue receiver's certificates

and make them liens, but denied its right to make such liens and the costs of the receivership prior to its liens.

5.  On the 6th day of February, 1892, the court granted the order of sale prayed for by the receiver, and entered judgment for the lien creditors, with a foreclosure of their respective liens; the judgment for the Land Mortgage Bank being for $31,000, with a foreclosure of its lien.  The receiver's certificates and expenses of the receivership were declared to be a lien superior to those of the lien creditors, and the amount due on the certificates and the expenses of the receivership were charged pro rata (the amount against each parcel of property to be determined by the price it sold for) against the property ordered sold.  This order was not excepted to by the Land Mortgage Bank.

6.  In March, 1892, all the property of the improvement company was sold in pursuance to the order of the court, and brought $166,-703.65.  At such sale the Land Mortgage Bank bid in the property, upon which it had a lien, for $26,300.  The total expense of the receivership, costs, fees, back taxes, betterments, and operating expenses of the electric railroad, all charged as first liens under the decree of sale, amounted to $14,355.75, of which amount it was ascertained that the Land Mortgage Bank was liable for $4525.84 as its pro rata share according to the terms of said decree, which amount was paid by said bank.  The terms of sale were one-third cash and the balance secured by notes, but, by authority of the court, the Land Mortgage Bank's bid was credited on its judgment, and a deed to the property free from incumbrances was made to it by the receiver.

7.  At the date of the decree there were no assets in the hands of the receiver other than the property ordered to be sold, all of which was incumbered by liens, except the liability of stockholders or unpaid stock subscriptions.  But it was not then known by the Land Mortgage Bank what amount, if any, could be collected by the receiver on such subscriptions, though he expected to collect a large amount, and up to May 1, 1893, he had collected thereon about $20,000.  The amount of unsecured indebtedness of the Laredo Improvement Company amounts to about $600,000.  All expenses of collecting by suit or otherwise have, since the sale of its property, been paid out of collections from stockholders, but the amount of such expenses does not appear from the record.  The assessment ordering the receiver to collect the amount due on stock was made May 10, 1892, and the first collections were made in October, 1892.

8.  The unsecured creditors had no interest in the lien property except the equity of redemption, and up to date of the sale all expenses incurred at their instance in the receivership were incidental to the lien property, and incurred in its preservation and management.  The receiver had charge of the property covered by the Land Mortgage Bank's lien from the 6th of January, 1891, to the 1st day of April,

1892, and collected the rents, which were more than sufficient to pay the taxes and insurance on that particular property. The receivership is still pending.

*Conclusions of Law.*—The doctrine of subrogation rests on the principle of equity, and privity of contract is not necessary to its support. Gans v. Thieme, 93 N. Y., 232; Cottrell's Appeal, 23 Pa., 294. It requires, (1) that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and (2) in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgages, etc. Sandford v. McLean, 3 Paige, 117; Ins. Co. v. Middleport, 124 U. S., 549. These requisites have been met by appellee in this case. It paid debts due the holders of the receiver's certificates, and due for costs and expenses incident to the receivership. About this there can be no question, for the property upon which it had a lien to secure the debts due it from the improvement company sold for $4700 less than the amount due. It would have therefore been entitled to the entire proceeds of the sale, $26,300, had it not been compelled by the decree of the court to pay the $4525.84, which was adjudged a superior lien on the property, to save itself from loss by reason of such superior lien. Therefore it was subrogated to the right of the parties to whom the $4525.84 was paid, which was to have the amounts due them on receiver's certificates, etc., paid by the Laredo Improvement Company.

The appellee was not concluded from asserting this right by the decree of sale which established a lien on the property superior to appellee's. Instead of being concluded by it, its right of subrogation emanates from such decree. The decree simply determined that there was a lien on the property superior to that of the Land Mortgage Bank, which was ascertained in accordance with the decree to be $4525.84, and by it, to this extent, but no further, was the appellee concluded. When the Mortgage Bank discharged the lien its right of subrogation attached, and as such existed without reference to whether or not a sufficient sum to discharge it would ever be realized from other assets of the insolvent corporation. When a sum sufficient to reimburse the Mortgage Bank was collected from the stockholders, as is shown, upon which there was no lien superior to that paid off by the appellee, it was entitled to an order of the court requiring the receiver to reimburse it out of such amount. Clifford v. Campbell, 65 Texas, 246.

The appellee by a cross-assignment of error complains of the court's not granting an order for $4525.84, the amount prayed for, instead of $3000. It appears from the record, that all expenses of collecting by suit or otherwise have been paid out of collections from stockholders'

liabilities, but the amount of such expenses is not in any way shown. In the absence of such showing we must presume that there was no error in the trial court's not granting an order for the full amount.

*Affirmed.*

Delivered May 16, 1894.

Writ of error refused by the Supreme Court.