**PROVIDENCE INSTITUTION FOR SAVINGS, Petitioner,**

v.

**W. J. SIMS, d/b/a Lone Star Mill and Lumber Company et al., Respondents.**

**No. B—1292.**

Supreme Court of Texas.

May 14, 1969.

Locke, Purnell, Boren, Laney & Neely, Larry M. Lesh, Dallas, for petitioner.

James A. Baker, Dallas, for respondents.

WALKER, Justice.

The proceeds of a loan secured by a deed of trust on real estate were used, pursuant to an express subrogation agreement, to retire part of the indebtedness secured by a first lien on the property. There was an intervening mechanic's lien. The remainder of the indebtedness secured by the first lien was later subrogated to the deed of trust, which was subsequently foreclosed. The question to be decided is whether the purchaser at the foreclosure sale took the property free of or subject to the mechanic's lien.

The facts are stipulated. On August 9, 1961, Nortex Mortgage Company, Inc., executed a deed of trust on the property to secure the payment of a note for $150,000.00 and other indebtedness to Republic National Bank of Dallas. On April 4, 1962, W. J. Sims, respondent, perfected a mechanic's lien on the property in the amount of $4,972.76. On September 21, 1962, Nortex executed a deed of trust on the property to secure the payment of a note for $180,000.00 to Hughes Investment Corporation. This deed of trust contains the following provision:

"The beneficiary shall be subrogated to all rights, titles, liens and interests securing the payment of indebtedness discharged, paid or retired out of the proceeds of the loan evidenced by said Note * * * all of which rights, titles, liens and interests shall * * * continue and remain in force until all indebtedness secured under the terms of this Deed of Trust has been paid in full. * * *"

At the request of and for the benefit of Nortex, Hughes Investment paid $173,380.-37, the net proceeds of the $180,000.00 note, to Republic Bank to be applied on indebtedness secured by the latter's deed of trust. The payment was credited by the bank as follows: (1) $104,795.72 on the $150,000.00 note and (2) $68,584.65 on other indebtedness secured by its deed of trust. This left a balance of $45,204.28 unpaid on the $150,000.00 note.

In October, 1962, respondent instituted suit against Nortex for foreclosure of his mechanic's lien. On December 12, 1962, Republic Bank subordinated the lien of its deed of trust to the lien of the deed of trust securing the note to Hughes Investment. Default was made in the payment of the note to Hughes Investment, and on February 4, 1964, the deed of trust securing same was foreclosed by exercise of the power of·sale: The property was purchased at the foreclosure sale by Providence Institution for Savings, petitioner, for the price of $150,000.00. On August 13, 1964, respondent recovered judgment against Nortex for the amount of his claim plus attorney's fees and for foreclosure of his mechanic's lien.

Petitioner then brought the present suit to enjoin the foreclosure sale and remove the mechanic's lien as a cloud on its title. Respondent answered and filed a cross-action for foreclosure of his lien as against petitioner and for a sale of the property. The case was tried before the court without a jury, and judgment was entered awarding respondent a foreclosure of the mechanic's lien subject to petitioner's right to redeem. The Court of Civil Appeals affirmed. 435 S.W.2d 295. It is our opinion that on the facts disclosed by the present record, petitioner owns the property free and clear of the mechanic's lien.

Findings of fact and conclusions of law were not requested or filed. Respondent argues and the Court of Civil Appeals held: (1) that Hughes Investment was not subrogated to the prior lien of Republic Bank, because the indebtness to the latter was not discharged in full; and (2) that even if Hughes Investment were entitled to subrogation, the foreclosure under its own deed of trust, rather than the deed of trust given for the benefit of Republic Bank, did not affect the mechanic's lien. Respondent also contends that subrogation did not arise because Hughes Investment had constructive notice of the intervening lien.

We recognize the general rule that a person who is subrogated to the rights or securities of another may not enforce the same until the claim of the latter against the debtor has been paid in full. This rule is for the protection of the prior creditor, who cannot equitably be compelled, without his consent, to place another on equal footing with respect to security held for the satisfaction of the entire indebtedness. If the prior creditor consents to pro tanto subrogation of one who makes partial payment, however, no one else is entitled to object. See Cason v. Westfall, 83 Tex. 26, 18 S.W. 668; Texas & St. L. R. Co. v. McCaughey, 62 Tex. 271; Sherman v. El Paso Nat. Bank, Tex.Civ. App., 100 S.W.2d 402 (wr. dis.); 50 Am.Jur. Subrogation § 28; Annotations, 9 A.L.R. 1956, 32 A.L.R. 568, 46 A.L.R. 857, 53 A.L.R. 304, 91 A.L.R. 855. A person making partial payment is entitled to enforce his right of subrogation when the prior creditor is estopped to deny that his claim was paid in full. Cason v. Westfall, supra. If the balance of the indebtedness owing to the prior creditor is dicharged, subrogation of the person who theretofore paid part of the indebtedness will be recognized to the extent of his payment. Brown v. Thompson, 99 W.Va. 56, 128 S.E. 309; Restatement, Restitution § 162, Comment c.

In this instance Republic Bank did not merely consent to pro tanto subrogation. By subordinating the lien securing the remainder of its indebtedness to the Hughes Investment deed of trust, it agreed that the latter would become a first lien on property. Respondent and Nortex were not prejudiced in any way by this transaction, and neither could object to the subrogation of Hughes Investment to the lien of the bank. The subordination agreement precludes any objection by the only party entitled to object, and Hughes Investment then became entitled to enforce its right of subrogation to the prior lien. See Banks v. Cartwright, Tex.Civ.App., 26 S.W.2d 708 (no writ).

There is no merit in respondent's contention that the subordination agreement executed by the bank made both its lien and that of Hughes Investment inferior to the mechanic's lien. Before the bank subordinated, it held the first lien and Hughes Investment was entitled to pro tanto subrogation thereto as against everyone except the bank. By virtue of the subordination agreement, the lien securing the bank's indebtedness became inferior to the lien securing the indebtedness to Hughes Investment but both liens remained superior to the mechanic's lien. The rule that ordinarily governs priorities when a first lien is subordinated to a third lien has no application under the facts of this case. See McConnell v. Mortgage Inv. Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280; Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220.

The record does not disclose whether Hughes Investment had actual knowledge of the mechanic's lien, but it clearly was charged with constructive notice. Negligence on the part of one seeking subrogation is of some importance when the right is wholly dependent upon equitable principles. The effect of notice, actual or constructive, of an intervening lien has been considered in a number of cases. The question generally arises where money is advanced to discharge a prior mortage and a new mortgage is taken with the understanding or in the belief that it will constitute a first lien on the property. Some courts take the position that constructive notice of the intervening lien is a sufficient basis for denying subrogation; others hold to the contrary. See 50 Am.Jur. Subrogation § 108; Annotation, 70 A.L.R. 1396. At least one of our Courts of Civil Appeals has adopted the latter view. Sanger Bros. v. Ely & Walker Dry Goods Co., Tex.Civ. App., 207 S.W. 348 (wr. ref.).

Where purely equitable subrogation is the issue, each case is usually controlled by its own facts. In the present case, however, the right of subrogation does not depend entirely upon equitable principles. Nortex expressly agreed that Hughes Investment would be entitled to

subrogation, and the proceeds of the $180,000.00 note were used, pursuant to that agreement, to discharge part of the indebtedness secured by the first lien. The first lien was never released but was later subordinated to the lien of Hughes Investment, and there is no contention that respondent was placed in a worse position by the transaction. We hold that under these circumstances neither actual nor constructive knowledge of the intervening lien will defeat the right of subrogation to which the debtor agreed in the later deed of trust. See Wilkins v. Gibson, 113 Ga. 31, 38 S.E. 374; 50 Am.Jur. Subrogation § 107; Annotation, 99 Am.St.Rep. 474, 516.

Respondent also contends that even if Hughes Investment was subrogated to the first lien, the mechanic's lien could not be affected by foreclosure of the deed of trust executed after his lien was perfected. If read out of context, certain portions of the opinion in Platte v. Securities Inv. Co., Com.App., 55 S.W.2d 551, seem to support this contention. There a writ of attachment was levied on property that was subject to two prior liens, one held by the First National Bank of Jacksonville and the other by Oskar Laebo. After levy of the attachment, the owner of the property executed a deed of trust to secure the payment of a note to Miss Platte. The proceeds of this loan were used to pay the indebtedness secured by the two prior liens, which were released of record. Securities Investment Company purchased the property at the sale in foreclosure of the attachment lien, and Miss Platte purchased at the subsequent trustee's sale under her deed of trust.

The indebtedness to the First National Bank of Jacksonville was barred by limitations when paid by Miss Platte, and the trial court fixed $250.00 as the amount to which she was subrogated by virtue of her payment of the indebtedness to Laebo.

It entered judgment awarding Securities Investment title to the property and granting Miss Platte foreclosure of her lien for the $250.00. The Commission of Appeals affirmed, holding: (1) that the title acquired by Securities Investment at the sale in foreclosure of the attachment lien was not affected by the subsequent foreclosure of the deed of trust; (2) that Miss Platte was subrogated to the two prior liens; but (3) that Securities Investment was entitled to interpose the defense of limitation with respect to the indebtedness formerly owing to the First National Bank of Jacksonville. As we understand the opinion, the holding that title was in Securities Investment is based upon the court's conclusion that an owner of land may not, after levy of a writ of attachment, subject the property to a power of sale that can be effectively exercised to divest the title of the purchaser at the attachment sale. This conclusion may be entirely sound in view of the provisions of Article 301,[1] Vernon's Ann.Tex.Civ.Stat., but it has no application here.

By virtue of its subrogation to the first lien, Hughes Investment occupied the same position as the bank with respect to that lien. Its deed of trust did not create an entirely new lien but preserved the existing lien and prescribed new terms and conditions for foreclosure. Nortex was authorized to execute the deed of trust for that purpose, since it owned the equity of redemption and was primarily liable on the indebtedness to the bank, provided the position and rights of the intervening lienholder were not prejudiced thereby. See Continental State Bank of Big Sandy v. Pepper, 130 Tex. 71, 106 S.W.2d 654; Belcher Land Mortgage Co. v. Taylor, Com. App., 212 S.W. 647; Texas Co. v. Tucker, Tex.Civ.App., 129 S.W.2d 762 (wr. ref.); Richmond v. Nowlin, Tex.Civ.App., 135 S. W.2d 521 (wr. dis. judg. cor.).

1. Article 301 provides, in part, that "The land so attached may be sold under execution after judgment, and the sale thereof shall vest in the purchaser all the estate of the defendant in attachment in such land, at the time of the levy of such writ of attachment."

The deed of trust to Hughes Investment was a first lien on the property, and the purchaser at the foreclosure sale acquired title free of the mechanic's lien. Glasscock v. Travelers Ins. Co., 113 S.W. 2d 1005 (wr. ref.). There is no contention that respondent was prejudiced in any way by lack of notice of the trustee's sale or of the fact that the proceeds of the Hughes Investment loan were used to retire part of the indebtedness owing to Republic National Bank.

The judgments of the courts below are reversed, and the cause is remanded to the district court with instructions to render judgment for petitioner.