**CHICAGO TITLE INSURANCE CO., Appellant,**

v.

**LAWRENCE INVESTMENTS, INC., Appellee.**

**No. 2–89–059–CV.**

Court of Appeals of Texas, Fort Worth.

Dec. 20, 1989.

Kent D. Kibbie, Law, Snakard & Gambill, Fort Worth, for appellant.

John L. McCraw, Jr., McKinney, for appellee.

Before JOE SPURLOCK, II, LATTIMORE and MEYERS, JJ.

## OPINION

LATTIMORE, Justice.

This case involves a dispute concerning lien priority and title to real property. The trial court overruled appellant's motion for summary judgment and granted appellee's motion for summary judgment. Appellant has perfected its appeal to this court.

We reverse and render.

Both parties agree that there is no issue of material fact to be resolved. The dispute centers upon the judicial construction of their lien priority. It is necessary, for the disposition of this case, to discuss the undisputed pertinent facts with regard to title transfers and liens upon the property in dispute.

Both parties claim a common source of title. The property was owned by John Porter Auto Sales ("Porter"). Porter sold the property to Lawrence Investments, Inc. ("Lawrence") in 1976. Porter retained a vendor's lien which was secured by a deed of trust executed by Lawrence. Lawrence executed a note to evidence the unpaid purchase price of the property ("Porter note").

Thereafter, Lawrence sold the property to Allibhai Corporation ("Allibhai") in January of 1980. The sale was made subject to the Porter lien. Allibhai executed a note to evidence the unpaid purchase price of the property ("Lawrence note") which was secured by a deed of trust. The Lawrence note was a wrap-around mortgage which "wrapped" the Porter note.

Sometime later in that year the city of Denton filed a tax lien against the property for delinquent property taxes.

In January of 1981, Allibhai obtained a loan from First City Bank—Farmers Branch ("First City"). Allibhai used the property in question as collateral for the loan. It secured the note to the bank by a deed of trust. Of the loan proceeds, $6,507.72 was used to satisfy the tax lien upon the property; $71,218.08 was used to satisfy the remainder of the Porter note. The remainder of the funds borrowed from First City were used to remodel a motel which was situated on the property.

In August 1983, Allibhai sold the property to Canindusa. The sale was made subject to the Lawrence lien. Thereafter, the debt between Allibhai and Lawrence became delinquent and Lawrence began foreclosure proceedings upon the property. A dispute concerning priority of liens arose between First City and Lawrence.

Appellant, Chicago Title Insurance Company ("CTIC") is the insurance underwriter who had insured the bank's lien as a first and superior lien on the property under a mortgagee policy of title insurance. When the dispute concerning lien priority arose between First City and Lawrence, CTIC purchased the note held by the bank for $113,593.91 and obtained an assignment of the note from the bank. Both litigants posted the property for separate trustee's sales to be had on the same day. Each party purchased the property at its respective trustee's sale. Thereafter, CTIC sued for a declaratory judgment, seeking to establish superior title to the property by asserting a superior subrogation lien as against the vendor's lien and deed of trust lien held by Lawrence. Lawrence cross-claimed a trespass to try title action. Both parties moved for summary judgment for title. Appellant's motion for summary

judgment was denied. Appellee's motion for summary judgment was granted.

In appellant's two points of error it complains that the trial court erred in denying its motion for summary judgment and in granting appellee's motion for summary judgment.

Appellant contends that because the proceeds of the note from First City to Allibhai were used to pay the tax lien and the Porter lien the bank became equitably subrogated to these liens. Both parties agree these were the senior liens upon the property. Further, since appellant has been assigned the rights of the bank with regard to this piece of property, appellant contends it is equitably subrogated to these liens.

■ Subrogation is a doctrine of equity. It substitutes another person in the place of the creditor so that person in whose favor subrogation is applied succeeds to the right of the creditor in relation to the debt. *Fishel's Fine Furniture v. Rice Food Market*, 474 S.W.2d 539, 541 (Tex. Civ.App.—Houston [14th Dist.] 1971, writ dism'd) (citing *Platte v. Securities Inv. Co.*, 55 S.W.2d 551 (Tex.Comm'n App.1932, judgment adopted)); *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). The position of Texas courts with regard to subrogation was carefully analyzed by the Texas Supreme Court in *Faires v. Cockrill*, 88 Tex. 428, 31 S.W. 190 (1895). The court ruled:

> When the creditor ... has a security from the principal obligor, or either of them, or if the debt itself constitutes a lien upon property of the debtor, as a vendor's lien, or if, from its nature, it be entitled to priority in payment over other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens, and priorities of the creditor to the extent that he makes payment on the debt; ...

*Id.* 31 S.W. at 194. The court observed: "Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state, ..." *Id.* Additionally, this court has recognized

and applied the doctrine of subrogation. *See Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348 (Tex.Civ.App.— Fort Worth 1918, writ ref'd).

■ Turning to the case at bar, appellant contends that because the proceeds from the bank loan were utilized to pay off liens which had priority, the bank assumed a position of priority to the extent of those liens. Further, because the bank stood in the shoes of the prior lienholder and CTIC now stands in the shoes of the bank, appellant (CTIC) contends that it had the senior lien. We recognize that a person cannot be a mere volunteer to subrogation. He must be protecting an interest which would be jeopardized if the debt was not paid. *McDermott v. Steck Co.*, 138 S.W.2d 1106, 1109 (Tex.Civ.App.—Austin 1940, writ ref'd); *Ricketts v. Alliance Life Ins. Co.*, 135 S.W.2d 725, 734 (Tex.Civ.App.—Amarillo 1939, writ dism'd judgm't correct) (opinion on reh'g). The bank did not become a volunteer in conditioning its loan to Allibhai on payment of the Porter lien and the delinquent taxes. The improvement loan was a legitimate business transaction and those acts done to establish and protect the superiority of the lien securing such loan entitles the bank to its subrogation.

■ Subrogation is not self-executing, it must be asserted at some proceeding. *Johnson v. Koenig*, 353 S.W.2d 478, 483 (Tex.Civ.App.—Austin 1962, writ ref'd n.r. e.). We believe that bringing action for declaratory judgment is a sufficient assertion at a judicial proceeding to establish the subrogation.

■ Appellant's case turns on the law established in *Diversified Mortgage Inv. v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794 (Tex.1978) (opinion on reh'g). Appellant contends that the payment of the priority liens was sufficient to give its inferior deed of trust priority. We are inclined to agree. The facts in *Diversified* are very similar to our own. In that case, Dollar Inns had purchased property for the development of motels. The purchase money was advanced by First Bank. The vendor retained a vendor's lien secured

by a deed of trust. Thereafter, the general contractor, Blaylock, began work on the contruction of the motels; Blaylock duly perfected a mechanic's and materialman's lien on the property. Subsequent to these liens, Diversified Mortgage Investors lent money for permanent financing of the project. Some of these funds were used to pay off the original vendor's lien. When a dispute arose concerning the title to the property, each side sought declaratory judgment. There the Texas Supreme Court quoted from a prior case out of that court, and held: "By virtue of its subrogation to the first lien, [DMI] occupied the same position as [First Bank] with respect to that lien. Its deed of trust *did not create an entirely new lien but preserved the existing lien and prescribed new terms and conditions for foreclosure.*" *Id.* at 807 (emphasis added) (brackets in original) (quoting from *Providence Institution for Savings v. Sims,* 441 S.W.2d 516, 520 (Tex.1969)). The court further reasoned: "We recognize the importance of this doctrine to lenders in this state. It serves to protect a lienholder from intervening liens, at least to the amount of the initial lien, when the lienholder has discharged a prior superior lien." *Id.* The court made it clear that a creditor's leapfrog priority extends only to the discharged amount of the superior lien. He had priority only to the extent that his funds were used to actually discharge a senior lien.

We hold that appellant has a prior lien to the extent that the bank's funds were used to pay off the tax lien and the Porter lien. Further, under *Diversified,* appellant has a superior title interest. Appellant, in holding a trustee's sale under the deed of trust it had obtained from the bank by assignment, was exercising the method appropriate to foreclosing its lien interest under the bank's subrogation to the lien interest held by Porter. The title then vested in CTIC, as purchaser, free and clear of the lien claims of Lawrence. *See Diversified,* 576 S.W.2d at 808.

The matter of division of the sale proceeds has not been raised and is not before us. Appellant's first and second points of error are sustained.

We reverse the judgment of the trial court and render judgment in favor of appellant.